UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN HEMSLEY, | No. 2:15-cv-1650 AC P |
| Plaintiff, | |
| v. | ORDER |
| KHIN WIN, M.D., et al., | |
| Defendants. | |

I.     Introduction

Plaintiff is a state prisoner at California State Prison Solano (CSP-SOL), under the authority of the California Department of Corrections and Rehabilitation (CDCR). Plaintiff proceeds pro se in this civil rights action filed pursuant to 42 U.S.C. § 1983, in which plaintiff alleges that defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. Plaintiff has consented to the jurisdiction of the undersigned Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c), and Local Rule 305(a). See ECF No. 5.

For the reasons set forth below, the court reaches the rare conclusion that plaintiff has failed to state a claim upon which relief may be granted, see 28 U.S.C. § 1915A(b)(1), and that amendment of plaintiff's complaint would be futile. Accordingly, the court dismisses this action with prejudice pursuant to Rule 41(b), Federal Rules of Civil Procedure. The court denies as moot plaintiff's requests to proceed in forma pauperis and for appointment of counsel.

1

II.     Background

Plaintiff previously filed a near-identical action in this court on November 13, 2012.[1] See Hemsley v. Swarthout et., Case No. 2:12-cv-02930 JAM EFB P (hereafter "Hemsley I"). Each of the defendants named in Hemsley I – CSP-SOL Warden G. Swarthout, Dr. Traquina, Dr. Carr and Dr. Win[2] – are named in the instant action. In screening plaintiff's First Amended Complaint (FAC) in Hemsley I, pursuant to 28 U.S.C. § 1915A, the court found that it stated potentially cognizable claims against defendants Traquina, Carr and Win, but not against defendant Swarthout. See Hemsley I, ECF No. 13. Subsequently, the court granted defendants' motion to dismiss the FAC for failure to state a cognizable claim against any of the remaining three defendants, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure. See Hemsley I, ECF Nos. 33, 36. However, that dismissal was without prejudice to plaintiff filing a Second Amended Complaint (SAC) within thirty days, limited to attempting to state a cognizable Eighth Amendment claim only against defendant Dr. Win. Id. When plaintiff failed to meet that deadline, the court, in August 2014, dismissed the entire action without prejudice. See Hemsley I, ECF Nos. 37, 39.

Nearly a year later, on July 28, 2015, plaintiff filed the instant action against the same defendants named in Hemsley I, as well as defendants State of California, CDCR, and CSP-SOL Medical Appeals Coordinator Fonville.[3]

---

[1] Unless otherwise noted, petitioner's filing dates referenced herein are based on the prison mailbox rule, pursuant to which a document is deemed served or filed on the date a prisoner signs the document (or signs the proof of service, if later) and gives it to prison officials for mailing. See Houston v. Lack, 487 U.S. 266 (1988) (establishing prison mailbox rule); Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings by prisoners).

[2] The last name of Dr. Win is incorrectly identified as "Winn" in Hemsley I. The correct spelling is maintained throughout this order.

[3] The court does not address plaintiff's allegations and claims herein against numerous "Doe" defendants. Proceeding on allegations against "Doe" defendants is disfavored in the Ninth Circuit; the appropriate procedure is to dismiss Doe defendants without prejudice. See Gillespie v. Civiletti, 629 F.2d 637, 642 (9th Cir. 1980). In a case that proceeds on cognizable claims against specifically identified defendants, the plaintiff may amend his complaint to name a previously denominated Doe defendant whose identity was later discovered. See Brass v. County of Los Angeles, 328 F.3d 1192, 1195-98 (9th Cir. 2003); Wakefield v. Thompson, 177 F.3d 1160, 1163 (9th Cir. 1999).

III. In Forma Pauperis Application and Request for Appointment of Counsel

Although plaintiff has submitted a declaration and prison trust account statement that make the showing required by 28 U.S.C. § 1915(a), see ECF No. 2, the court will deny plaintiff's motion as moot due to the dismissal of this action.

Similarly, plaintiff's request for appointment of counsel in this action, see ECF No. 3, will be denied as moot.

IV. Legal Standards

A. Legal Standards for Screening Prisoner Complaint

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984).

Rule 8 of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly at 555). To survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" Iqbal at 678 (quoting Twombly at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility

3

that a defendant has acted unlawfully." Id. (citing Twombly at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly at 557).

          B.        Legal Standards Governing Medical Deliberate Indifference Claims

As a threshold matter, to state a cognizable claim under Section 1983, plaintiff must allege an actual connection or link between the challenged conduct of a specific defendant and plaintiff's alleged constitutional deprivation. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir.1988) (citations omitted).

To state a cognizable claim for unconstitutional medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to [his] serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Plaintiff must allege both that his medical needs were objectively serious, and that defendants possessed a sufficiently culpable state of mind. Wilson v. Seiter, 501 U.S. 294, 299 (1991); McKinney v. Anderson, 959 F.2d 853, 854 (9th Cir. 1992) (on remand). A serious medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.[4]

The requisite state of mind is "deliberate indifference." Hudson v. McMillian, 503 U.S. 1, 5 (1992). In Farmer v. Brennan, 511 U.S. 825 (1994), the Supreme Court established a very demanding standard for "deliberate indifference." Negligence is insufficient. Id. at 835. Even civil recklessness (failure to act in the face of an unjustifiably high risk of harm which is so obvious that it should be known) is insufficient to establish an Eighth Amendment violation. Id.

---

[4] Indications that a prisoner has a serious medical need are the following: the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. See e.g. Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990) (citing cases); Hunt v. Dental Dept., 865 F.2d 198, 200-01 (9th Cir. 1989). McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992), overruled on other grounds, WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

1  at 836-37.  It is not enough that a reasonable person would have known of the risk or that a

2  defendant should have known of the risk.  Id. at 842.

> In the Ninth Circuit, the test for deliberate indifference consists of two parts.  First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.  This second prong . . . is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference.

8  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations, punctuation and quotation

9  marks omitted); accord, Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Lemire v.

10 CDCR, 726 F.3d 1062, 1081 (9th Cir. 2013).

11      Hence, to state a claim for deliberate indifference to serious medical needs, a prisoner

12 must allege that a prison official "kn[ew] of and disregard [ed] an excessive risk to inmate health

13 or safety; the official must both be aware of the facts from which the inference could be drawn

14 that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer,

15 511 U.S. at 837.  A difference of opinion between an inmate and prison medical personnel—or

16 between medical professionals—regarding appropriate medical diagnosis and treatment are not

17 enough to establish a deliberate indifference claim.  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.

18 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).  To establish a difference of

19 opinion rising to the level of deliberate indifference, "plaintiff must show that the course of

20 treatment the doctors chose was medically unacceptable under the circumstances."  Jackson v.

21 McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

22      V.    Plaintiff's Allegations

23      As in Hemsley I, plaintiff contends herein that defendants acted with deliberate

24 indifference in delaying adequate medical care for his left eye, resulting in blindness and potential

25 removal of the eyeball.  Plaintiff's allegations were carefully set forth by the court in Hemsley I.

26 See Hemsley I, ECF No. 33 at 2-4.  The instant complaint provides no material new allegations.

27      To summarize, plaintiff suffered an eye injury in 2006, while confined in the Santa Rita

28 County Jail, but did not obtain medical treatment for his injury.  Plaintiff also has sickle cell

anemia, glaucoma, retinopathy and one or more cataracts. In 2008, plaintiff was sentenced to imprisonment under the authority of CDCR, and transferred to Pleasant Valley State Prison (PVSP). Plaintiff alleges that he immediately sought treatment for his left eye, which he received from approximately June 2009 through November 2009. Exhibits to plaintiff's instant complaint indicate that during this period plaintiff was diagnosed with glaucoma, sickle cell retinopathy, and cataracts, and that he was experiencing reduced vision in his left eye.

During this period plaintiff submitted two "urgent" requests for medical services. The first request, dated June 18, 2009, noted in pertinent part "L eye blindness, "no vision" in left eye, "unknown cause," and sought a referral to an ophthalmologist. See ECF No. 1 at 38. The consulting ophthalmologist examined plaintiff on July 1, 2009, and diagnosed glaucoma in plaintiff's left eye and sickle cell retinopathy in plaintiff's right eye. Id. The ophthalmologist recommended an "urgent" retinal consultation with Dr. Clark to rule out retinal detachment in plaintiff's left eye.[5] Id. Plaintiff was prescribed Xalatan, eye drops to treat glaucoma for a period of six months. Id.

The second urgent request for medical services attached to the complaint is dated August 5, 2009. See ECF No. 1 at 37, 49-51 (underlying medical record). The request is mostly illegible but appears to request the services of Dr. Clark for, inter alia, a possible vitrectomy (removal of lens) and lens implant in plaintiff's left eye. The referral was sought "within 2 wks please," and appears to reflect a "grave prognosis." Id. at 37. The underlying medical records appear to reflect that plaintiff was seen by the specialist in August 2009, who discerned no retinal detachment but recommended removal of a cataract. Id. at 49-51 (but see id. at 50 (retinal detachment noted, then corrected to reflect no detachment)). A notation that surgery be scheduled on an urgent basis was changed to "routine." Id. at 50.

On September 14, 2009, plaintiff submitted a grievance seeking immediate surgery based on the opinion of his specialist that the surgery should take place "sooner the better," because the specialist "may be able to save my vision in my left eye." Id. at 54. On September 25, 2009, the

---

[5] These notations use the medical abbreviations "OS" (oculus sinister) and OD (oculus dexter) to refer to the left eye and right eye, respectively.

1   grievance was partially granted on informal review, with a notation that plaintiff "was seen on
2   9/23/09 and you have another specialty appt. pending." Id. at 56.

3         On November 3, 2009, plaintiff was informed at a prison classification hearing that he
4   was going to be transferred from PVSP because his sickle cell anemia made him more vulnerable
5   to "Valley Fever" (a fungal respiratory disease contracted by some prisoners and other residents
6   living in California's Central Valley). Id. at 12.

7         On November 21 (or 23), 2009, plaintiff obtained "laser treatment to create 'ducts'
8   through the back of my left eye to relieve the pressure" in preparation for cataract surgery. Id. at
9   12. At the time, plaintiff was told that "[t]he retina was in good shape and the lens was at the rear
10  (sic) of the eyeball." Id. at 17.

11        In late November 2009, plaintiff was transferred to CSP-SOL. His assigned primary care
12  physician was defendant Dr. Win, and the prison optometrist to whom he was referred was
13  defendant Dr. Carr. Plaintiff alleges that he immediately told Dr. Win that he needed emergency
14  eye surgery. On January 4, 2010, plaintiff filed a grievance seeking immediate eye surgery (Log
15  No. SOL-24-10-10150). Id. at 63. On January 25, 2010, the grievance was partially granted on
16  informal review, with the following notation, id.:

17
> You were evaluated on 1/15/10 by Dr. Carr, optometrist, who
> generated a Request for Services for the ophthalmologist. Your
18  information has been forwarded to the scheduling department. You
> will be advised once your appointment has been secured.
19

20  Plaintiff responded with a request that the appointment be scheduled within the next two weeks.
21  Id. Dr. Win was assigned to interview plaintiff on First Level Review, but did not do so until
22  May 13, 2010. Id. at 62.[6] (It appears that the matter was not assigned to Dr. Win until March 25,
23  2010, with a due date of May 7, 2010. Id.) Plaintiff's grievance was partially granted on the
24  ground that plaintiff's specialty appointment was scheduled for the third week of May. Id. On
25  May 17, 2010, plaintiff completed the portion of the grievance form requesting second level
26

---

27  [6] The court has also reviewed this exhibit as an attachment to plaintiff's original complaint in Hemsley I, because it is significantly more legible in that filing. See Hemsley I, ECF No. 1 at
28  12.

review, id. at 64, but there is no indication that he obtained such review or that the grievance was further exhausted.

Plaintiff submitted another grievance on May 20, 2010, asserting that he had lost sight in his left eye, and requested to be seen by an ophthalmologist (Log No. SOL-24-10-12267). See id. at 57.[7]

The next day, May 21, 2010, based on prior scheduling, plaintiff was seen by an ophthalmologist at the University of California Davis (UCD). See Hemsley I, ECF No. 1 at 8 (last line, noting date). In the instant action, plaintiff refers to this ophthalmologist as "Dr. Doe #1" and describes his medical assessment as follows, ECF No. 1 at 13 (paragraphs and numbers omitted):

> [Dr. Doe #1] examined my left eye and stated there was nothing more that could be done because the rear lens in my left eye had been smashed all the way to the front of my left eye because the "ducts" became clogged and the pressure inside my eyeball from the glaucoma had pushed the lens all the way forward. I had not been prescribed the eye drops needed to relieve the pressure created by the glaucoma. Dr. Doe #1 stated I may lose the eyeball all together because I was not treated within the allowable time.

See also id. at 17 (plaintiff was informed that the delay "allowed the 'ducts' to become clogged and pressure built up, detached the retina, and pushed the lens to the front of the irus (sic)").

On July 6, 2010, on First Level Review of plaintiff's grievance submitted May 20, 2010 (Log No. SOL-24-10-12267), nurse practitioner Malony interviewed plaintiff and partially granted his grievance. See ECF No. 58 (see also n.5, supra). Plaintiff objected to the decision on the following grounds, id.:

> My treatment started last year. I'm very dissatisfied because everyone seems to misunderstand what I'm trying to get accomplished which is save my vision and not have to lose my eyeball. I feel as though my civil rights were violated and I may lose my eye. I've already lost the sight after explaining to Dr. Win that the time was of the essence and very important. What do we do now that he done wasted a year?

---

[7] The court has also reviewed this exhibit attached to plaintiff's original complaint in Hemsley I, because it is significantly more legible in that filing. See Hemsley I, ECF No. 1 at 19-20.

8

1    On August 4, 2010, Dr. Win partially granted the grievance on Second Level Review.  See id.

2    Plaintiff was informed that he had 15 days to submit a response, requesting Third Level Review.

3    Id.  Plaintiff did not submit his response until September 25, 2010, stating in part, id.:

> I'm very dissatisfied because I've been given the run around for a year to the point where nothing else can be done for my eye.  I've got to just sit around until it's time for my eye to be taken out.  The doctors at UC Davis stated that due to time issues there's nothing they can do now because the lens in the back of my eye is smashed.

7    Because plaintiff's response did not comply with applicable time limits, this grievance was

8    cancelled.  See ECF No. 1 at 61.  There is no indication in plaintiff's complaint or exhibits that

9    plaintiff challenged this cancellation or pursued another relevant grievance.  Based upon this

10   evidence, it appears that plaintiff did not exhaust his administrative remedies as to any claims in

11   this action.

12        VI.     Dismissal of All Defendants in Hemsley I

13        In Hemsley I, upon screening plaintiff's original complaint pursuant to 28 U.S.C.

14   § 1915A, the court dismissed the complaint without prejudice to the filing of a First Amended

15   Complaint (FAC), for failure to state a deliberate indifference claim.  See Hemsley I, ECF No. 6.

16   In screening plaintiff's subsequently filed FAC, the court found that it stated potentially

17   cognizable claims against defendants Traquina, Carr and Win but not against defendant

18   Swarthout.  See Hemsley I, ECF No. 13.  Later, in addressing the merits of defendants' motion to

19   dismiss pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure, the court found that the FAC

20   failed to state a cognizable deliberate indifference claim against any defendant, and dismissed the

21   FAC with leave to file a Second Amended Complaint only against Dr. Win.

22        The court found that plaintiff's FAC failed to state a cognizable claim against

23   Dr. Traquina because "'[t]here is no respondeat superior liability under section 1983.'"  Hemsley

24   I, ECF No. 33 at 8 (quoting Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989)).  The court

25   further found:

> [P]laintiff's remaining allegation, that Dr. Traquina personally reviewed plaintiff's numerous high priority referrals and failed to send plaintiff back to the ophthalmologist he had been seeing when he was housed at PVSP, also fails to show, without more, that Dr. Traquina acted with deliberate indifference.  Plaintiff does not

9

> allege that this failure to schedule an appointment for plaintiff with the ophthalmologist was purposeful or was done with the intent to delay or hinder plaintiff's care. Moreover, even when construed liberally, plaintiff's factual allegations do not give rise to a plausible inference that Dr. Traquina acted with the intent to interfere with plaintiff's medical care by failing to do so. At most, plaintiff's allegations concerning Dr. Traquina suggest that plaintiff merely disagrees with Dr. Traquina's actions because he did not send plaintiff back to his prior ophthalmologist. Such a contention is insufficient to show that Dr. Traquina acted with deliberate indifference towards plaintiff's medical needs.
>
> . . . Finally, plaintiff does not allege any facts suggesting that Dr. Traquina was personally involved with the examinations and treatments plaintiff received while plaintiff was housed at CSP-Solano or that Dr. Traquina otherwise engaged in actions that denied, delayed or interfered with plaintiff's medical treatment. Accordingly, plaintiff's deliberate indifference claim against Dr. Traquina must be dismissed.

Hemsley I, ECF No. 33 at 8-9 (internal citations omitted).

The Hemsley I court also found that plaintiff's FAC failed to state a cognizable claim against Dr. Carr for the following reasons:

> [T]he facts plaintiff alleges in his first amended complaint with regard to Dr. Carr do not demonstrate or permit the inference that at any point Dr. Carr delayed, denied, or otherwise failed to provide adequate medical care to plaintiff for this reason. Moreover, the alleged facts indicate that Dr. Carr told plaintiff that, as an optometrist, he was unqualified to perform the corrective eye surgery plaintiff needed, which an ophthalmologist needed to perform. This shows that Dr. Carr told plaintiff that the treatment was unavailable from Dr. Carr not with the intent to prevent plaintiff from receiving necessary care, but rather for the very appropriate reason that he was actually unable to perform the procedure(s) plaintiff needed. Plaintiff's allegations further show that Dr. Carr appropriately generated a request for plaintiff to see an outside ophthalmologist after their meeting on January 15, 2010, which was sent to the scheduling department at CSP-Solano. Rather than demonstrating indifference, this indicates that Dr. Carr was responsive and did what he could to assist plaintiff in obtaining the medical treatment he needed and that the decision to schedule plaintiff's appointment with the ophthalmologist in late May of 2010 was outside Dr. Carr's control. Based on these alleged facts, the court finds that plaintiff's factual allegations fail to plausibly show that Dr. Carr acted with deliberate indifference.
>
> Plaintiff's also claims that Dr. Carr failed to inform plaintiff that he needed to obtain surgical treatment immediately during their February 2010 meeting. However . . . . during their meeting in February 2010, [] Dr. Carr had already set into motion the events that would lead to plaintiff receiving an examination from an ophthalmologist. Additionally, the various medical grievance

> forms filed by plaintiff, which are attached as exhibits to the complaint, show that plaintiff was already aware of the gravity of his eye condition and was seeking medical treatment for his condition prior to his meeting with Dr. Carr. Merely warning plaintiff of the repercussions of waiting to obtain surgical treatment for his eye would not have led to plaintiff receiving ophthalmological care more quickly under these alleged circumstances, nor would it have prevented further injury caused by plaintiff's eye condition. Accordingly, plaintiff's allegations fail to plausibly show that Dr. Carr acted with deliberate indifference to plaintiff's serious medical needs. Thus, this claim should be dismissed.

Id., ECF No. 33 at 6-7 (internal citations omitted).

Finally, the Hemsley I court found that plaintiff's FAC failed to state a cognizable claim against defendant Dr. Win, but granted plaintiff leave to file a Second Amended Complaint to again attempt to state a cognizable claim against Dr. Win. The court reasoned:

> Plaintiff alleges that Dr. Win was his primary care doctor at CSP-Solano from November 2009 until the end of May 2011. ECF No. 12 at 9. Plaintiff further alleges that he personally saw Dr. Win "over 25 times beginning in November through January."[8] During these meetings, plaintiff expressed his concerns regarding the problems with his left eye to Dr. Win. Id. During his first appointment, plaintiff explained to Dr. Win that, when he had been transferred to CSP-Solano, he was engaged in the beginning stages of a serious eye procedure and that an ophthalmologist had told him that he had to have this procedure done or he would lose his eye. Dr. Win saw plaintiff on May 12, 2010 and informed plaintiff that he had an appointment with a specialist at U.C. Davis in the third week of May. Plaintiff was also seen by Dr. Win in August of 2010, in response to an inmate grievance plaintiff submitted for his ankles, and partially granted plaintiff's grievance. Plaintiff also "filed numerous appeals demanding to speak to someone about Dr. Win's inabilities etc."
>
> Plaintiff alleges that he told Dr. Win "about the numerous high priority referrals that was [sic] stamped URGENT or EMERGENCY in [plaintiff's] medical file." He further claims that he expressed to Dr. Win the urgency in which eye surgery needed to be done on numerous occasions and that "Dr. Win went as far as to tell [him] that [his medical files] did not exist." Plaintiff alleges that Dr. Win's statement was false and that Dr. Win knew that it was false because plaintiff's ophthalmologist had informed plaintiff in 2009 that she had placed plaintiff's "urgent 2 to 4 weeks priority papers" in plaintiff's medical file. Furthermore, plaintiff alleges

---

[8] [FN in quoted text] Although plaintiff does not specify the year(s), based on the documents plaintiff has attached to his first amended complaint, the court assumes that the "November until January" period plaintiff refers to was from November 2009 until January 2010.

that "Dr. Win has a personal hatred" towards him because Dr. Win told plaintiff that plaintiff's medical papers were not stamped "URGENT" even though plaintiff had "all kinds of papers stamped URGENT." Plaintiff argues that Dr. Win's actions directly caused the pain he allegedly has suffered as a result of his not receiving laser eye treatment before it became too risky for him to undergo such a procedure.

While plaintiff alleges facts sufficient to show that Dr. Win knew of plaintiff's serious medical condition and the threat that it posed, plaintiff's allegations, as they are currently stated, fail to show that Dr. Win engaged in "a purposeful act or failure to respond to [plaintiff's] . . . medical need" in a way that caused plaintiff to suffer the harm he alleges. Jett, 439 F.3d at 1096.  Plaintiff alleges that he was seen by Dr. Win numerous times between November 2009 and January 2010, but plaintiff fails to allege any facts regarding what actions, if any, Dr. Win took during these meetings that would suggest that Dr. Win purposefully tried to delay, deny, or interfere with plaintiff's treatment. Furthermore, plaintiff fails to allege facts showing when Dr. Win allegedly told him that there were no medical records indicating that plaintiff's condition was "urgent" or what impact this allegedly false statement had on plaintiff's ability to obtain necessary medical care.  For instance, there are no facts alleged that would suggest that Dr. Win made this alleged false statement during one or more of the meetings between November and January and used it as a reason to deny or delay plaintiff from receiving further treatment, which might support a claim of indifference on Dr. Win's part. Further, if Dr. Win had made this alleged statement during his May 12, 2010 interview with plaintiff, after plaintiff had already been scheduled for an appointment with the outside ophthalmologist, there are no facts presented that, if true, could show how Dr. Win's action caused the delay in treatment that plaintiff complains about.

Moreover, plaintiff's other alleged facts fail to show how Dr. Win's actions caused the harm plaintiff alleges.  Plaintiff's allegation that Dr. Win acted with deliberate indifference because he had "a personal hatred" towards plaintiff is conclusory and fails to include facts, which if true, are sufficient to show that Dr. Win actually denied, delayed, or otherwise interfered with plaintiff's medical care.  Nor does the allegation include specific facts from which it could plausibly be inferred that Dr. Win harbored such a feeling toward plaintiff and allowed his treatment by affected by it. Furthermore, the documents plaintiff has attached to his complaint show that Dr. Win partially granted each of plaintiff's grievances he had reviewed, suggesting that Dr. Win attempted to facilitate and further plaintiff's care rather than intentionally hindering it. See Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint.").

In his opposition brief, plaintiff claims that Dr. Win "denied and delayed treatment previously ordered on August 5, 2009." Deliberate indifference may be found "where prison officials and

> doctors deliberately ignore[ ] the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner." Wakefield v. Thompson, 177 F.3d 1160, 1165 (9th Cir. 1999). But plaintiff fails to allege facts in either his complaint or opposition indicating that Dr. Win engaged in activity that delayed or denied plaintiff the treatment allegedly ordered by plaintiff's previous doctor, or that Dr. Win ignored the previous treatment order for reasons unrelated to plaintiff's medical needs. Without additional factual allegations regarding Dr. Win's actions with respect to the alleged August 5, 2009 treatment order, plaintiff fails to allege facts sufficient to support a deliberate indifference claim on this basis.
>
> Nevertheless, given the assertions in plaintiff's opposition brief and certain of the facts alleged in the complaint, it is not yet clear that the defects in plaintiff's complaint are incapable of being cured by amendment. With further elaboration as to certain factual allegations in his current complaint and opposition brief, it may be possible for plaintiff to state a claim for deliberate indifference against Dr. Win. Accordingly, plaintiff's claim against Dr. Win should be dismissed with leave to amend. Potter v. McCall, 433 F.2d 1087, 1088 (9th Cir. 1970) (quoting Armstrong v. Rushing, 352 F.2d 836, 837 (9th Cir. 1965)) (holding that inmate plaintiffs proceeding with civil rights claims are entitled to "an opportunity to amend the complaint to overcome the deficiency unless it clearly appears from the complaint that the deficiency cannot be overcome by amendment.").

Id., ECF No. 33 at 9-11 (internal citations omitted).

VII.   Screening of Plaintiff's Complaint in the Instant Case

In the instant case, plaintiff's deliberate indifference claim against CSP-SOL Chief Medical Officer Dr. Traquina must be dismissed for the same reasons noted in Hemsley I. Specifically, Traquina's role was supervisory and there are no allegations that he was personally involved with plaintiff's treatment or referral decisions. Dr. Traquina's supervisory role does not render him liable for the actions of his subordinates under a respondeat superior theory. See Iqbal, supra, 556 U.S. at 676-77; Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009).

Plaintiff also fails to state a cognizable claim against defendant CSP-SOL Warden Swarthout. Despite his many allegations against Swarthout,[9] none assert that Swarthout had any

---

[9] Plaintiff alleges, in pertinent part, that Warden Swarthout "maintain[ed] and enforce[ed] a custom, policy and practice of negligently hiring, retaining, training, assigning, supervising and disciplining medical personnel who are predisposed to deny [inmates] access to medical attention;" "condoned, tolerated and accepted deliberate indifference in denial of medical attention and the denial of access to medical care and treatment of inmates;" "failed to provide the medical services for inmates [at CSP-SOL] . . . failed to have adequate staffing of medical

1 personal knowledge or involvement in the events giving rise to plaintiff's claims. Plaintiff cannot
2 rely on a respondeat superior theory. "Liability under § 1983 must be based on the personal
3 involvement of the defendant." Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir.1998)
4 (citation omitted) ("plaintiff must allege facts, not simply conclusions, that show that an
5 individual was personally involved in the deprivation of his civil rights"). Nor do plaintiff's
6 allegations state a claim against defendant Swarthout in his official capacity based on a challenge
7 to any specific official policy or practice, underscored by the fact that plaintiff does not seek
8 prospective injunctive relief, only damages. See Kentucky v. Graham, 473 U.S. 159, 167 n.14
9 (1985) ("implementation of state policy or custom may be reached in federal court . . . because
10 official-capacity actions for prospective relief are not treated as actions against the State")
11 (citation omitted).

12    Dismissal is also appropriate for plaintiff's claim against newly named defendant CSP-
13 SOL Appeals Coordinator V. Fonville. Plaintiff does not assert any personal knowledge or
14 involvement by Fonville in the events giving rise to plaintiff's claims, and none of the grievances
15 attached as exhibits to the complaint reference Fonville. The appeals coordinator is identified
16 only as the party "responsible for the handling of appeals of plaintiff at Solano State Prison and at
17 all times relevant herein was acting in the course and scope of his employment and under color of
18 law. He is sued in his individual capacity." ECF No. 1 at 9. The only other, remotely relevant,
19 allegation in the complaint is that plaintiff's "appeals are returned to me Partially Granted, but
20 their reply is vague and make no sense." Id. at 16. Again, there can be no liability under Section
21 1983 unless there is some affirmative link between a defendant's challenged conduct and the
22 ///
23 ///

---

25 personnel, and adequate leadership and supervision. . . , and as a result of the lack of said
accountability measures, numerous medical care providers regularly delayed or denied medical
26 and mental health care to inmates, engaged in a pattern and practice of failure to see inmate
patients for serious but treatable medical and mental health conditions, thereby violating the
27 Constitutional rights of patient-inmates, departmental polic[ies] and procedures;" and "[s]aid acts
and omissions, practices and policies . . . were the moving force behind the violations of
28 Constitutional rights and damages complained of here by plaintiff." ECF No. 1 at 19-21.

14

claimed deprivation of a constitutional right, Rizzo, supra, 423 U.S. at 371, and such linkage is absent in plaintiff's allegations against defendant Fonville.[10]

The instant complaint does not state a cognizable claim against the State of California or CDCR, based on the Eleventh Amendment immunity accorded states and the fact that neither states nor state agencies are "persons" within the meaning of Section 1983. See Will v. Michigan Dept. of State Police, 491 U.S. 58, 69-71 (1989); see also Wolfe v. Strankman, 392 F.3d 358, 364 (9th Cir. 2004).

Regarding plaintiff's claim against defendant Dr. Carr, this court agrees with the conclusion reached in Hemsley I that plaintiff's allegations fail to state a cognizable deliberate indifference claim and that further amendment would be futile. This court finds it significant that plaintiff was seen relatively quickly by Dr. Carr, on January 15, 2010, and, pursuant to this initial appointment, Dr. Carr requested that plaintiff be scheduled with the UCD ophthalmologist. Plaintiff does not allege that Dr. Carr failed to indicate that the requested appointment be scheduled on an urgent basis, and there is no copy of a relevant request for services in plaintiff's exhibits. Even had Dr. Carr requested immediate scheduling, other variables were necessarily in play due to the constraints and discretion of CSP-SOL and UCD medical schedulers. In the absence of specific allegations or a reasonable inference that Dr. Carr was capable of expediting the UCD appointment but failed to do so, knowing that such delay would create an excessive risk of further injury to plaintiff, plaintiff fails to state a deliberate indifference claim against defendant Dr. Carr.

///

---

[10] Moreover, there is no reasonable likelihood that plaintiff could state a cognizable claim against defendant Fonville in an amended pleading. Because prisoners are not entitled to any prison grievance procedure as a matter of course, a claim that prison officials failed to comply with grievance procedures or failed to resolve a particular grievance in a favorable manner is not cognizable under Section 1983. See e.g. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (failure to process prisoner's grievances not actionable under Section 1983). Prisoners have no stand-alone due process rights related to the administrative grievance process. See Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988); see also Ramirez v. Galaza, 334 F.3d 850, 860 (there is no liberty interest entitling prisoners to a specific grievance process). Because there is no right to any particular grievance process, plaintiff cannot state a cognizable civil rights claim against defendant Fonville based on allegations that he failed to properly process plaintiff's inmate grievances.

1    Remaining is plaintiff's claim against defendant Dr. Win, for which plaintiff was accorded
2    leave to file a SAC in Hemsley I.  In assessing the cognizability of plaintiff's current claim under
3    28 U.S.C. § 1915A, this court must determine whether plaintiff's allegations overcome the
4    deficiencies in plaintiff's FAC identified in Hemsley I, particularly whether plaintiff has
5    developed his allegation that Dr. Win deliberately delayed treatment previously ordered on
6    August 5, 2009.  See Hemsley I, ECF No. 27 at 8-9.  Significantly, plaintiff does not repeat this
7    allegation in the instant complaint, although his exhibits include a request for health care services
8    dated August 5, 2009, discussed supra.  See ECF No. 1 at 37.  (This request and the underlying
9    medical records were also included as exhibits to plaintiff's FAC in Hemsley I.  See Hemsley I,
10   ECF No. 12 at 12-9.)  Thus, plaintiff makes no new material allegations against Dr. Win in the
11   instant complaint.
12       Moreover, it is reasonable to infer from the present complaint and exhibits that Dr. Win
13   acted relatively quickly to obtain an appointment for plaintiff with optometrist Dr. Carr.  It is also
14   reasonable to infer that Dr. Win thereafter deferred to Dr. Carr's expertise and judgment.
15   Although there was a notable lag in Dr. Win's First Level Review of plaintiff's initial CSP-SOL
16   grievance, see discussion supra, it appears that the matter was assigned to Dr. Win without any
17   sense of urgency and, by the time Dr. Win reviewed the grievance, plaintiff's appointment with
18   the UCD ophthalmologist was imminent.  Plaintiff does not contend that Dr. Win had the
19   authority to shorten the delay before plaintiff's May 21, 2010 appointment, but failed to exercise
20   that authority.  These facts do not support a deliberate indifference claim.  Nor does the instant
21   complaint make any allegations against Dr. Win after plaintiff's UCD appointment.[11]
22       In the absence of specific allegations or a reasonable inference that Dr. Win was capable
23   of expediting plaintiff's ophthalmology appointment, yet failed to do so, knowing that such delay
24   would create an excessive risk of further injury to plaintiff, plaintiff fails to state a deliberate

---

[11] The only further conduct of Dr. Win that is evident in plaintiff's exhibits took place on August 4, 2010 when, on second level review, Dr. Win partially granted plaintiff's grievance submitted on May 20, 2010 (Log No. SOL-24-10-12267).  See ECF No. 58.  However, plaintiff's response to Dr. Win's decision, which was untimely submitted, expressed only general dissatisfaction with his medical treatment over the course of the last year.  Id.

indifference claim against defendant Dr. Win.  For these reasons, and the reasons stated in Hemsley I, plaintiff's deliberate indifference claim against Dr. Win must be dismissed.

Examining the complaint in this action as whole, this court finds that plaintiff has failed to "state a [federal] claim upon which relief may be granted."  See 28 U.S.C. § 1915A(b)(1).  The court also finds that amendment of the complaint would be futile.  This court is persuaded that plaintiff is unable to allege any facts, based upon the circumstances he challenges, that would state a cognizable deliberate indifference claim against any of the named defendants.  This court also finds that amendment would be futile based on plaintiff's failure to exhaust any relevant administrative grievance,[12] and by application of the statute of limitations,[13] due to plaintiff's

---

[12] The Prison Litigation Reform Act (PLRA) requires that prisoners exhaust "such administrative remedies as are available" before commencing a suit challenging prison conditions.  42 U.S.C. § 1997e(a).  See generally Albino v. Baca, 747 F.3d 1162, 1169 (9th Cir. 2014).  Regardless of the relief sought, a prisoner must pursue an appeal through all levels of a prison's grievance process as long as some remedy remains available.  The PLRA also requires that prisoners, when grieving their appeal, adhere to CDCR's "critical procedural rules." Woodford v. Ngo, 548 U.S. 81, 91 (2006); Jones v. Bock, 549 U.S. 199, 218 (2007).  Absent other deficiencies in a given case, a court must dismiss a complaint without prejudice if it is clear that the prisoner failed to exhaust his available administrative remedies prior to commencing the action.  Jones, 549 U.S. at 223-24; Lira v. Herrera, 427 F.3d 1164, 1175-76 (9th Cir. 2005).

[13] The following statute of limitations analysis appears to apply.  The accrual date most favorable to plaintiff appears to be May 21, 2010, the date on which plaintiff learned from the UCD eye specialist that there was "nothing" that could done to save his vision or, possibly, his eyeball.  See, e.g., Lukovsky v. City and County of San Francisco (9th Cir. 2008) 535 F.3d 1044, 1048 (accrual date is the date when plaintiff discovers he has been injured).  A four-year statute of limitations applies.  See Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004) (applying forum state's personal injury statute of limitations); Cal. Code Civ. Proc. § 335.1 (California has a two-year statute of limitations for personal injury actions); see also Cal. Code Civ. Proc. § 352.1(a) (disability of imprisonment tolls the limitations period for an additional two years).  Under this construction, plaintiff was required to commence his civil rights action within four years of May 21, 2010, or no later than May 21, 2014.  The instant action, filed July 28, 2015, was therefore untimely filed.  Although plaintiff's prior action was timely commenced on November 13, 2012, there is no authority for the instant complaint to "relate back" to the filing date of plaintiff's prior complaint, or for tolling during the period of time that plaintiff's prior action was pending.  See O'Donnell v. Vencor Inc., 466 F.3d 1104, 1111 (9th Cir. 2006) (second complaint does not "relate back" to first complaint because it is not an "amendment" but a separate filing); Young v. Rorem, 977 F.2d 594 (9th Cir. 1992) (new action cannot "relate back" to original complaint under Federal Rule of Civil Procedure 15(c) because the original action was dismissed and not pending when the new action was filed); Hill v. Prunty, 55 Fed. Appx. 418, 419 (9th Cir. 2003) (new complaint alleging same claim does not relate back to prior complaint, although the latter was dismissed without prejudice); Alexander v. Foegen, 443 Fed. Appx. 333,

failure to timely submit a SAC in Hemsley I. "A district court may deny leave to amend when amendment would be futile." Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013); accord Lopez v. Smith, 203 F.3d 1122, 1129 (9th Cir. 2000) ("Courts are not required to grant leave to amend if a complaint lacks merit entirely.").

## VIII. State Law Claims

Plaintiff's complaint in this case alleges several pendant state law claims (see Claims Three through Six). While federal courts may exercise supplemental jurisdiction over state law claims "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction," id. § 1367(c)(3). Indeed, unless "considerations of judicial economy, convenience[,] and fairness to litigants" weigh in favor of the exercise of supplemental jurisdiction, "a federal court should hesitate to exercise jurisdiction over state claims." United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966). Each of these considerations weighs in favor of declining to exercise supplemental jurisdiction over plaintiff's state law claims. Accordingly, plaintiff's state law claims will be dismissed without prejudice to their renewal in state court.

## IX. Summary

Plaintiff's medical concerns, particularly the loss of vision in his left eye and potential loss of his eyeball, are clearly serious. This court is not unsympathetic to plaintiff's distress, particularly when he allegedly learned in May 2010 that "nothing" could be done to alleviate further deterioration of his left eye. However, plaintiff's allegations and exhibits do not plausibly support a cognizable claim that any defendant knew a delay in obtaining specialized ophthalmology care for plaintiff risked serious injury to him and deliberately disregarded that risk. In the absence of allegations supporting a reasonable inference that any medical defendant –

---

334 (10th Cir. 2011) (new lawsuit against same defendants cannot "relate back' to dismissed complaint) (citing cases). For these reasons, it appears that plaintiff's instant action is barred by the statute of limitations.

or the warden or medical appeals coordinator – acted with deliberate indifference to plaintiff's serious medical needs, plaintiff's claims must be dismissed.

Moreover, even if plaintiff could state a cognizable deliberate indifference claim against any defendant, such a claim would be barred due to plaintiff's failure to exhaust his administrative remedies, and by application of the statute of limitations.

In light of the futility of amendment in the instant action, the court declines to impose the filing fee associated with plaintiff's in forma pauperis application, and does not reach plaintiff's request for appointment of counsel.

Should plaintiff have a new and specific medical claim based on current or more recent circumstances – e.g., plaintiff asserts that "to date, my eye (left) still has large, white cataracts growing over the irus (sic), I cannot see at all. No surgery has been performed and I may completely lose the eyeball," ECF No. 1 at 16 – plaintiff must exhaust his administrative remedies on such claim against a specific prison or consulting medical official, or other prison official, and may then commence a new civil action that is limited to that claim.

X. Conclusion

Accordingly, for the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's federal claims are dismissed with prejudice, pursuant to Rule 41(b), Federal Rules of Civil Procedure.

2. Plaintiff's state law claims are dismissed without prejudice to their renewal in state court.

3. Plaintiff's motion to proceed in forma pauperis, ECF No. 2, and motion for appointment of counsel, ECF No. 3, are denied as moot.

4. The Clerk of Court is directed to close this case.

DATED: March 22, 2016.

ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

19